UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AFOUSSATOU BOIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15cv0660 TCM |
| ) | |
| JEH JOHNSON, Secretary, U.S. Dep't ) | |
| of Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This immigration dispute is before the Court[1] on the opposed motion to dismiss filed by defendants Jeh Johnson, Secretary of the United States Department of Homeland Security; Loretta E. Lynch, Attorney General of the United States[2]; Leon Rodriguez, Director of the United States Citizenship and Immigration Services (USCIS); Terri Robinson, Acting District Director, USCIS Kansas District Office; and the United States of America (hereinafter collectively referred to as "Defendants").

## Background

Afoussatou Boire (Plaintiff) is a citizen of Mali. (Compl. ¶ 6.) In January 2000, when she was nineteen years old, she entered the United States as a J-2 dependent of her father, Dr. Soualika Boire, a J-1 nonimmigrant alien under 8 U.S.C. § 1101(a)(15)(J). (Id. ¶ 20.) In September 2000, Dr. Boire returned to Mali. (Id. ¶ 22.) Plaintiff did not. (Id. ¶ 23.) Instead,

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Loretta E. Lynch is automatically substituted for Eric H. Holder. See Fed.R.Civ.P. 25(d).

she changed to an F-1 student visa status, earning an Associate's degree in 2006, a Bachelor's degree in 2008, and then a Master's degree in 2011. (Id. ¶ 23; Compl. Ex. J.) Each degree is in nursing. (Id.) Between the Associate's degree and Bachelor's degree, Plaintiff's employer, Barnes-Jewish Hospital, petitioned for I-140 status for her as an immigrant worker. (Compl. ¶ 24.) The petition was granted. (Id.) Plaintiff then filed in September 2007 an I-485 application to adjust her status to that of a lawful permanent resident. (Id. ¶ 25.) She was interviewed pursuant to this application in December 2013. (Id. ¶ 28.) In March 2014, her application was denied on the grounds that under her J-2 status she was obligated to, but did not, either return to Mali for two years or request and receive a waiver of that requirement. (Id.)

On April 28, 2014, Plaintiff moved to reopen the decision. (Compl. Ex. B.) While her motion was pending, the Republic of Mali notified the United States Department of State that it had no objection to Plaintiff remaining the United States. (Compl. Ex. F.) Plaintiff applied to the State Department for a waiver of the requirement she return to Mali. (Compl. Ex. G.) The waiver was granted in September 2014. (Id.) The notice cautions in bold, all-capital letters that it does not grant any immigration status. (Id.)

Eight days before Plaintiff applied for the waiver, her motion to reopen was denied. (Compl. Ex. B.)

Ten days after she was granted the waiver, Plaintiff moved to reopen and reconsider the adverse decision on her I-485 application. (Compl Ex. C.) The motion was dismissed as untimely. (Id.)

Plaintiff then filed this action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 704, seeking review of the decision denying her I-485 application and a judgment that the denial was arbitrary, capricious, and a violation of her due process rights. She also requests an award of attorney's fees and costs.[3]

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff failed to comply with the requirement of her J-2 status that she return to her home country for two years or request a waiver of that requirement *before* she apply to adjust her status to that of a legal permanent resident.

## **Discussion**

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). And, when ruling on a Rule 12(b)(6) motion, the Court "is limited to the material properly before it . . . , which may include public records and materials embraced by the complaint." **Noble Sys. Corp. v. Alorica Central, LLC**, 543 F.3d 978, 983 (8th Cir. 2008).

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides for judicial review of "final agency

---

[3]Defendants do not challenge this Court's jurisdiction to hear this matter.

action for which there is no other remedy in a court." 5 U.S.C. § 704. Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A) and (D). An adverse agency action "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." **Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.**, 463 U.S. 29, 44 (1983). And, "Courts should be slow to overturn an administrative decision . . . [but] are not obliged to stand aside and rubberstamp their affirmance of [such] decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy behind the statute." **NLRB v. Brown**, 380 U.S. 278, 291 (1965) (quotations omitted).

The question before the Court is whether Plaintiff's claim that the denial of her request to adjust her status based on her failure to return to Mali for two years or timely obtain a waiver of that requirement may be held unlawful under the APA.

Plaintiff entered the United States as a nonimmigrant alien. Title 8 U.S.C. § 1101(a)(15)(J) defines as a nonimmigrant alien a person who

> [has] a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United

States as a participant in a program designated by the Director of the United States Information Agency, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training and who, if he is coming to the United States to participate in a program under which he will receive graduate medical education or training, . . . and the alien spouse and minor children of any such alien if accompanying him or following to join him[.]

A person admitted under this section is not eligible to apply for permanent residence until he (i) has "resided and been physical present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States" or (ii) has had the residency requirement waived by the Attorney General after the foreign country of his nationality or last residence has stated in writing that it has no objection to such waiver.[4]  8 U.S.C.A. § 1182(e).

---

[4]Specifically, this section reads as follows:

(e) Educational visitor status; foreign residence requirement; waiver

No person admitted under section 1101(a)(15)(J) of this title or acquiring such status after admission (i) whose participation in the program for which he came to the United States was financed in whole or in part, directly or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or his last residence, (ii) who at the time of admission or acquisition of status under section 1101(a)(15)(J) of this title was a national or resident of a country which the Director of the United States Information Agency, pursuant to regulations prescribed by him, had designated as clearly requiring the services of persons engaged in the field of specialized knowledge or skill in which the alien was engaged, or (iii) who came to the United States or acquired such status in order to receive graduate medical education or training, shall be eligible to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa under section 1101(a)(15)(H) or section 1101(a)(15)(L) of this title until it is established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States: Provided, That upon the favorable recommendation of the Director, pursuant to the request of an interested United States Government agency (or, in the case of an alien described in clause (iii), pursuant to the request of a State Department of Public Health, or its equivalent), or of the Commissioner of Immigration and Naturalization after he has

When Congress enacted 8 U.S.C. § 1101(a)(15)(J) in 1961, the Senate version of the bill included a sentence reading, "'To the extent that the spouse and minor children of the person admitted under the new category (J) are issued a visa in that category, they, too, would be subject to the 2-year residence abroad provision.'" Naomi Schorr & Stephen Yale-Loehr, *The Odyssey of the J-2: Forty-Three Years of Trying Not to Go Home Again*, 18 Geo. Immigr. L.J. 221, 237 (2004) (quoting S.Rep. No. 87-372 at 19 (1961)). This version was not enacted. Id. Nine years later, Congress amended 8 U.S.C. § 1182(e) to read that its requirements applied to a person entering on a J visa, or acquiring such status when already in the United States, to "'participate in' certain exchange visitor programs." Id. at 240. See also note 3, supra.

Subsequently, a regulation of the Department of State classified as a J-1 visa holder an alien qualified under § 1101(a)(15)(J) and, among other things, accepted to participate in an exchange visitor program. 22 C.F.R. § 41.62(a)(1). A J-2 visa holder is the spouse or

---

determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien), or that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion, the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the Attorney General to be in the public interest except that in the case of a waiver requested by a State Department of Public Health, or its equivalent, or in the case of a waiver requested by an interested United States Government agency on behalf of an alien described in clause (iii), the waiver shall be subject to the requirements of section 1184(l) of this title: And provided further, That, except in the case of an alien described in clause (iii), the Attorney General may, upon the favorable recommendation of the Director, waive such two-year foreign residence requirement in any case in which the foreign country of the alien's nationality or last residence has furnished the Director a statement in writing that it has no objection to such waiver in the case of such alien.

minor child of a J-1 visa holder. 22 C.F.R. § 41.62(b). See also 22 C.F.R. § 41.12 (listing visa symbols of J-1 to be used for exchange visitor and of J-2 for spouse or child of J-1). That spouse or minor child is subject to two-year requirement of § 1182(e). 22 C.F.R. § 41.62(c)(4). Additionally, a regulation of USCIS defines as ineligible for adjustment of status to that of permanent resident "any alien who has or had the status of an exchange visitor under [§ 1101(a)(15)(J)] and who is subject to the foreign residence requirement of [§ 1182(e)], unless the alien has complied with the foreign residence requirement or has been granted a waiver of that requirement, under that section." 8 C.F.R. § 245.1(c)(2). The USCIS regulations further provide that, "A spouse or child admitted to the United States or accorded status under [§ 1101(a)(15)(J)] to accompany or follow to join an exchange visitor who is subject to the foreign residence requirement of [§ 1182(e)] is also subject to that requirement." 8 C.F.R. § 212.7(c)(4).

Thus, the Department of State and USCIS have interpreted the foreign residence requirement of § 1182(e) to apply to J-2 visa holders. Their interpretation of that statue is entitled to deference "unless it is 'contrary to statutory language.'" **Hernandez v. Holder**, 760 F.3d 855, 858 (8th Cir. 2014) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984)). It is not. By its terms, § 1182(e) applies to "*any* person admitted under section 1101(a)(15)(J)." 8 U.S.C. § 1182(e). See **Hernandez**, 760 F.3d at 859 (starting point of an agency's "statutory interpretation is the language of the statute itself").

Any ambiguity created by § 1182(e)'s further qualification of the persons to whom it applied, i.e., a person "whose participation in the program for which he came to the United States was financed in whole or in part, directly or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or his last residence," has been reasonably construed by the Department of State and USCIS as not excusing J-2 visa holders from the residence requirement. See **Roberts v. Holder**, 745 F.3d 928, 932 (8th Cir. 2014) (if text of statute is ambiguous and the applicable agency's interpretation is reasonable, that construction must be accepted by the federal court).

The interpretation of § 1182(e) that it applies to J-2 visa holders has been upheld in specific cases. For instance, in **Sheku-Kamara v. Karn**, 581 F.Supp. 582 (E.D. Pa. 1984), the court rejected the argument of a wife and son of a J-1 visa holder that they were not subject to the two-year residence requirement. The court cited four reasons. First, 8 C.F.R. § 212.7(c)(4) governed the matter. **Id.** at 583-84. Second, to find otherwise would "create the anomalous result of putting [J-2 visa holders] . . . in a better position than [the J-1 visa holder] who remain[ed] subject to the two year requirement." **Id.** 584. Third, finding that J-2 visa holders are subject to the requirement "is consistent with one of the primary objectives of the Exchange Visitor Program which is to facilitate the impartation of live impressions of the United States and its culture to other societies." **Id.** 584-85. Fourth, if a J-2 spouse and child are involved and are found not to be subject to the requirement, the J-1 visa holder "could possibly gain a back-door access to a waiver of the residence requirement on the basis of hardship grounds." **Id.** 585 n.10.

In rejecting the plaintiffs' argument, the court cited the decision of the Regional Commissioner in **Matter of Tabcum**, 14 I.&N. Dec. 113 (B.I.A. 1972), dismissing a motion to reconsider a denial of the alien's application for adjustment of status to that of a permanent resident. The only question was whether the alien, admitted pursuant to a J-2 visa, was subject to the two-year residence requirement. **Id.** at 114. He was. Similarly, in **Matter of Gatilao**, 11 I.&N. Dec. 893 (B.I.A. 1966), a spouse of a J-1 visa holder was held to be subject to the two-year residence requirement. Years later, in 1989 and 1990, the General Counsel issued opinions concluding that J-2 visa holders must satisfy the residence requirement even when the J-1 visa holder has done so. See Opinions 89-75, 90-17 (Defs.' Ex. A, ECF no. 17-2.)

Just as the two-year residence requirement applies to Plaintiff, so must that portion of § 1182(e) that authorizes the requirement to be waived by the Secretary of State if she obtains a "no objection" letter from her home country. See 22 C.F.R. § 41.63(d)(1) (providing for "[r]equests for waiver made on basis of statement from exchange visitor's home-country that it has no objection to the waiver"). Plaintiff obtained both the "no objection" letter from Mali and a waiver of the residence requirement. Defendants argue both had to be obtained before Plaintiff applied for adjustment of status and neither was until her application or her motion to reopen was denied. On this issue, the question whether Defendants acted arbitrarily or capriciously or abused its discretion cannot be answered on the face of Plaintiff's complaint.

In the instant case, Plaintiff entered the United States as a J-2 visa holder in January 2000. Her father entered as a J-1 visa holder. It appears from the complaint that they may have entered at different times because nine months after Plaintiff entered, her father returned to Mali, having earned a Ph.D. in entomology. A regulation of the Department of State, 22 C.F.R. § 41.62(d), requires that a consular officer notify the alien of two-year foreign residence requirement before issuing an exchange visitor visa. Cf. **Martinez v. Bell**, 468 F.Supp. 719, 729 (S.D. N.Y. 1979) (finding aliens' ignorance of immigration requirements did not excuse failure to timely comply with terms when "*no consular or immigration official had any . . . affirmative duty*" to explain such terms). There is no evidence this was done in Plaintiff's case. Cf. **Al-Khayyal v. INS**, 818 F.2d 827, 832 (11th Cir. 1987) (rejecting alien's argument he should have been granted waiver of two-year requirement when alien was informed in writing when issued J-1 visa that requirement would apply to him and distinguishing case in which alien was told when applying for J-1 visa that requirement would *not* apply to him); **Hetzer v. INS**, 420 F.2d 357, 360 (9th Cir. 1970) (remanding J visa holder's application for status as a permanent resident to develop record whether he relied on immigration official's misleading omission or information); **Huck v. Attorney General**, 676 F.Supp. 10, 13 (D. C. 1987) (similar holding).

Plaintiff's J-2 status was changed to that of a F-1 student, and she remained in the United States. There is no contention that she remained illegally. Indeed, the allegations of the complaint describe a continuing effort to follow the immigration regulations of which she aware. After becoming employed by Barnes-Jewish Hospital as an immigrant worker,

Plaintiff applied in 2007 to adjust her status to that of a lawful permanent resident. Six years later, she was interviewed. Four months later, her application was denied on the grounds that she had failed to either return to Mali for two years or request and receive a waiver of that requirement. The letter advising Plaintiff of the adverse decision also informed her of her right to move to reopen or reconsider the decision. (See Pl.'s Ex. A at 2.) Plaintiff so moved. She submitted a copy of Mali's "no objection" letter. Her motion to reopen was denied because she did not also submit a waiver from the Secretary of State. Within ten days of receiving this waiver, she moved to reopen or reconsider. This motion was dismissed as untimely.

Under the standard governing Rule 12(b)(6) motions, the Court cannot conclude that Plaintiff has failed to state a claim that Defendants abused their discretion when denying her motion to reopen and reconsider the decision denying her application to adjust her status to that or lawful permanent resident after she obtained a waiver of the two-year residence requirement. For instance, in **Matter of Gatilao**, 11 I.&N. Dec. at 895, the government argued that there was no error or denial of fairness in not staying removal proceedings of a J-2 visa holder who was then in illegal status pending his application for a waiver of the residence requirement because that application had not been filed until one month before the hearing. *It was held that the J-2 visa holder could reopen the proceedings to permit him to apply for adjustment of status should the waiver be granted*. **Id.** In **Chang v. Reno**, 986 F.Supp. 19 (D.C. 1997), the court denied the government's motion to dismiss or for summary judgment a J-visa holder's challenge to denial of his application for permanent resident status

made before alien applied for waiver of residence requirement and remanded to District Director for further consideration. Although the issue on appeal was the subsequent denial of the waiver itself, such need not have been addressed if the timing of the waiver was, as Defendants now argue, dispositive.

Additionally, the allegation in Plaintiff's complaint that the applications to adjust status of her mother and sister, both of who also entered the United States on J-2 visas, were granted based only on a "no objection" letter and no waiver further highlights the existence of a question whether that complaint has stated a claim that Defendants violated the APA when denying her motion to reopen the decision on her application.[5]

Because it cannot now be determined that Plaintiff's complaint does not state a claim,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **DENIED**. [Doc. 17]

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of September, 2015.

---

[5]Also, the Court notes that an appeal apparently lies from the *denial* of a waiver. See e.g. **Korvah v. Brown**, 66 F.3d 809 (6th Cir. 1995); **Singh v. Moyer**, 867 F.2d 1035 (7th Cir. 1989)l **Al-Khayyal**, 818 F.2d 827; **Mukherjee v. INS**, 793 F.2d 1006 (9th Cir. 1986); **Nayak v. Vance**, 463 F.Supp. 244 (D.S.C. 1978). Plaintiff was advised that there was no appeal from the denial of her application to adjust her status. (See Pl.'s Ex. A.) Thus, although Plaintiff obtained a "no objection" letter and a waiver, she apparently has less remedies to challenge her proposed removal than does someone who did not obtain the necessary prerequisites.